THIS is an action against a constable and his sureties, on their official bond, which, in the form prescribed by the act of assembly, stipulates, “ that lie shall, by himself, well and truly collect all officers', fees and dues put into his hands to collect, and account for and pay the same, at such time, and in such manner as is directed by law ; and shall well and truly execute, and due return make of all process and precepts to him directed, and to him delivered, and pay and satisfy all sums of money and tobacco by him received, upon any such process or precept, to the per- *358 sop op persons entitled thereto, or to their, order; and in all other things shall faithfully and truly execute and perforin the said office of a constable, according to la w. diiVine''the time nf his rriritmiianrp, therein.”
A person to whom execrations have been assigned, cannot maintain a suit in his own name, on the constable’s bond for failing- tc collect and pay them over; the suit must be im the name of the assign- or, for the ose of the assignee.
Several issues weré made up, and a verdict rendered and judgment given against the constable and his securities; to reverse which, this writ of error is prosecuted.
There was a motion made in the court below, to arrest the judgment, predicated on the ground, thaj; the whole declaration was bad ; and the revision of this motion is presented by the assignment of error, au4 will now claim our attention, and will lead us to con-side, r whether there is anv p-nnd hreach assigned.
The first declaration that was filed, was demurred to, and adjudged ill, on demurrer. An amended declaration, as to the assignment of breaches, was then filed. This amendment sets out, more at large, all the hi»f»iuihps iisfiip'nftr! in thfi wifrinal. ftvc.p.nt nrift.
2. This one avers, that sundry executions, aerainst 2. inis one avers, that sunary executions, agaxnsi divers persons, were put into the hands of said constable for collection, and that he had collected and no! accounted for them. This breach cannot be sustain, ed; for it does not show that the relator, James Lampion, hád 'any right to these executions, and without that was shown, he could not recover. It is jnol enough that he show an equitable right; it must be a légal one, and the executions must be payable to him and in fiis own name. It has been decided by this cotirt, in á case where a plaintiff had assigned over the benefit of a judgment, and execution had issued thereon for the benefit of the assignee, and the money was collected-, and an action was then brought on the sheriff’s bond by the assignee, as relator, in the name of the commonwealth, for a failure to pay over the money, that lie could not sustain it by averments and proof of the assignment; because the assignment could only show an equity in him, the judgment not being as. signable at law. This case'must then fall, by the same rule; especially, where the relator has scarcely claimed a title of any kind, to the executions in ques;. tion.
3. The next breach assigned, is, thatLampton, the relator, placed in the hands of the said constable, for collection, sundry fee-bills, for which the constable *359 gave receipts, specifying the amounts due, and from whom. In order to show a title to the suit for these fee-bills, the relator avers that he was a deputy sheriff of Thomas Scott, sheriff of tlie county, and that said fee.bills were due to the said Scott, for services rendered by himself and deputies, as sheriff, the preceding year; and that he, the relator, having performed sundry services as deputy tor said Scott, as a compensa tion therefor, the said Scott afterwards, and before the fee.bills w.ere put into the hands of said constable, transferred all his interest in said fee.bills to the relator, in part payment and satisfaction of what the said Scott owed him for the aforesaid services; and that the constable received them for collection, and gave his receipt therefore well knowing that they belonged to the said relator.
A deputy sheriff cannot maintain a suit in his own name on a constable’s bond for fee-bills, for services rendered by him, and pur into the constable’s hands to collect.
Nof can the high sheriff assign fee-bills to his deputy, or to any one else, in such manner as to render a suit on the constable’s bond in the name of the assignee, sustainable.
1 Dig. 2M:
This is, in substance, the title he sets out to the fee. bills, and the right to sue therefor ni his own name. It is very questionable, whether a deputy sheriff, for fee-bills due for the same services which he himself had l’endered, could maintain an action in his own name, as relator, on the official bond of the officer who undertook to collect them, and whether such an action does not belong exclusively to the principal, and whether all such bills are not legally due to him ; but, howev. er this máy be, we have no hesitation in saying that he cannot transfer to his deputy, or any other person, his fee-bills, so as to vest in them the legal right. They are not assignable by law, and the tranferee can only acquire an equity. Wé would not be understood as saying, that the transfer of such bills would destroy their powers or quality of distress. This they might still possess ; but they must be collected in the name of the principal, and the officer •who fails to collect them is responsible legally to the principal, for the benefit of the transferee. It is true, the expressions of the statute, which authorises suit upon a constable’s bond, are broad and comprehensive: “ Any person or persons injured by a breach of the condition, may, at his costs, prosecute a suit thereon, and recover damages.’1 But still, we cannot construe these expressions sc broad as to destroy the well known distinction be. tween legal and equitable rights, or to make fee.bills negotiable. The statute gives the action to those to whom it belongs by law, and not to those who claim *360 equitable interests. For the want, therefore, of showing such a legal title to these fee bills as would authorise an action therefor in the name of the relator, this breach must likewise fail.
Before the passage of the act of Feb 4th 1820. there was no law subjecting the constable and his securities to an action on their bond, for failing to account for bonds, notes or i accounts, received and collected without suit
That act is prospective merely.
4. The third breach alleges that the relator placed m the hands ot the constable, sundry debts from sundry persons, due by notes and accounts, for collection, and that he received and receipted for them, knowing them to belong to the relator, and collected the amount due, but did hot, although specially requested, pay it over to him.
The fourth breach avers that sundry other debts, due from other persons, fay notes, accounts and replevin bonds, were placed in the hands of the constable, and he, knowing them to belong to the relator, received and receipted for, and collected-them, and failed to pay the amount, though specially requested.
These two breaches differ not from each- other in character, except in the article of replevin bonds; and although they may have the force of judgments, yet they are noi such « process or precepts” as will au. thorise constables to collect money. They must, therefore, be considered as sealed instruments, which might command process to collect money, as other notes, with this difference, that the former might demand execution at once, and the latter original process, on which judgment might be rendered and execution follow. At all events, we do not conceive that the reception of replevin bonds to collect, did make the constable more liable on his official bond, than the reception of other bonds or notes. Hence, we shall consider these two breaches together, as essentially of the same character, and enquire whether the receipt of bonds, notes and accounts can make the constable and sureties liable on his bond of office, without showing that he obtained process and failed to execute it $ or, having executed it, had made the money ?
On the 4th of February 1820, the legislature passed a law which provides, “ that any constable receiving any writing obligatory or account for collection, and who shall collect the same without execution, the same proceedings may be had against him and his securities, as could or might be had against such constable and his securities, for money collected by him on execution” —-1 299.
*361 These accounts, notes and bonds were put into the constable’s hands during the year 18 L8, and before the .passage of this law, and when there was no law in •force, recollected by this court, which subjected constables and their sureties to such action, for a like undertaking. Can this statute, subsequently passed,' authorise this action against the sure! jes in the bond ? This act does not seem to create new duties, and then anpex their penalty, but increases the responsibility of the constable and his sureties. Whether the legislature could subject the sureties to greater responsibility for the acts of the constable, not before that time deemed official, may be a question of some importance, which we do not feel ourselves bound to answer at this .time; for we are satisfied that this act must be construed prospectively, and that the legislature has not attempted to lay the sureties liable for acts done by the constable before the passage of the act, and for which they were not responsible. It must, then, be for notes or accounts subsequently received, for which the action will lie, whether the subsequent reception would or would not make the sureties liable for subsequent receipts of such papers for collection, on a bond executed before the passage of the act. These accounts, notes and replevin bonds being all received previous to the passage of the act recited, therefore, cannot, without showing that they were collected by execution, subject the sureties to this action ; and these two last j breaches are likewise deemed invalid, and the whole declaration is bad. This conclusion renders it unnecessary to travel further into the cause, and to decide on the numerous pleas which were rejected by the court below j especially, as the opinion now rendered may, in its consequences, be decisive of the action.
The judgment must, therefore, be reversed with • costs, and the verdict and all previous proceedings, up to the filing of the declaration, inclusive, be set aside, and the cause remanded for new proceedings, not in. consistent qqth this opinion.